| Case No. | CV-17-7190-MWF (JEMx) | Date: January 4, 2018 |
|---|---|---|
| Title: | Frank L. Waterman v. Wells Fargo & Co., et al. | |

Present: The Honorable **MICHAEL W. FITZGERALD, U.S. District Judge**

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE PLAINTIFF'S MOTION TO REMAND [13]

Before the Court is Plaintiff's Motion to Remand, filed on November 13, 2017. (Docket No. 13). On November 27, 2017, Defendants Wells Fargo & Company ("WFC") and Wells Fargo Bank, N.A. ("WFB") (together, "Defendants" or "Wells Fargo") filed an Opposition. (Docket No. 18). On December 4, 2017, Plaintiff filed a Reply. (Docket No. 22). The Court held a hearing on December 18, 2017.

For the reasons set forth below, Plaintiff's Motion is **GRANTED**. Defendants have not established that WFC was fraudulently joined, "fraudulent" being used here with its technical jurisdictional meaning. Specifically, it is not clear under settled California law that WFC could not be liable in this employment discrimination lawsuit under an "integrated enterprise" theory of liability. Because Plaintiff is a California resident and WFC is headquartered in San Francisco, this Court lacks diversity jurisdiction and the action must be remanded.

## I. BACKGROUND

### A. Plaintiff's Allegations and Procedural Background

On August 25, 2017, Plaintiff commenced this employment discrimination and wrongful termination action against Defendants in the Los Angeles County Superior Court. (Complaint, Docket No. 1-1). Plaintiff's Complaint outlines the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                Date:  January 4, 2018
Title:    Frank L. Waterman v. Wells Fargo & Co., et al.

well-publicized controversy concerning fraudulent account openings that have embroiled Wells Fargo (Plaintiff refers to WFC and WFB collectively as "Wells Fargo" throughout most of the Complaint) since 2016 and the resulting financial and reputational fallout.  (*See id.* ¶¶ 13-21).

Plaintiff alleges that, "[u]ntil his termination by Wells Fargo on or about July 14, 2016, [he] was employed … as a RBPB 1 at Wells Fargo's Orange Grove Branch," where he worked for 12 years.  (*Id.* ¶¶ 3, 25).  The "RPBP 1" position is a retail banking position that entails tasks such as "consulting with customers regarding their financial needs and recommending product/solutions to meet those needs; opening and servicing accounts," and so forth.  (*Id.* ¶ 26).  Plaintiff was 43 years old at the time of his termination and was replaced with either a 29-year-old or a 37-year-old who was "less qualified, or in no event more qualified" than Plaintiff, but who was paid less than Plaintiff.  (*Id.* ¶¶ 25, 38-40).

Plaintiff alleges that "in the wake of Wells Fargo's April 2016 $1.2 billion settlement with the U.S. Government [concerning pre-financial crisis mortgage origination practices] and on the virtual eve of the announcement of the fraudulent account Scandal in September 2016, Wells Fargo's decision to fire him was the result of a company-directed policy and/or scheme which intentionally targeted older higher-paid private banking employees, such as Plaintiff …, who did not engage in unethical sales practices, for replacement by younger, lower-paid employees, as part of a scheme to help pay its gargantuan legal settlement and defense costs and offset billions of dollars in expected business losses as a result of the Scandal."  (*Id.* ¶ 23).

Plaintiff further alleges that "his termination was also motivated, at least in part, by retaliation for his protected conduct in reporting internally his concerns regarding Wells Fargo's improper sales practices…"  (*Id.* ¶ 24).  More specifically, Plaintiff alleges that "[i]n the years preceding his firing, Plaintiff had expressed concerns to others at Wells Fargo about, among other things, unrealistic sales goals imposed upon his district manager and pressure from management to push Wells

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:      Frank L. Waterman v. Wells Fargo & Co., et al.

Fargo products, including detailing these concerns in what was supposed to be a confidential company-wide survey." (*Id.* ¶ 31).

Plaintiff received "positive performance reviews up through the date of his termination, without any formal reprimands or adverse employment actions contained in his employee personnel file." (*Id.* ¶ 28). "Nevertheless, in the aftermath of his firing, Wells Fargo indicated on a U5 form it filed with the Financial Industry Regulatory Authority ('FINRA') that Plaintiff's firing was regarding improper use of signatures relating to the opening of accounts." (*Id.* ¶ 29).

Plaintiff asserts three claims for relief against Defendants under California state law: (1) age discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 *et seq.*; (2) wrongful termination in violation of California Labor Code § 1102.5, a whistleblower-protection statute; and (3) wrongful termination in violation of public policy. (*Id.* ¶¶ 41-67).

Seemingly recognizing that he was probably not, as a contractual matter, employed by both Defendants simultaneously, Plaintiff alleges that WFC and WFB "constituted an 'integrated enterprise' with interrelated operations, common management, centralized control of labor relations, and common ownership and/or financial control." (*Id.* ¶ 8).

On September 29, 2017, Defendants removed the action to this Court, invoking the Court's diversity jurisdiction. (*See* Notice of Removal ("NoR") (Docket No. 1) ¶¶ 6-20). It is undisputed that the amount in controversy exceeds $75,000. It is also undisputed that Plaintiff is a California citizen, WFB is a national banking association and a citizen only of South Dakota for diversity jurisdiction purposes, and WFC's principal place of business is in San Francisco, California. (*See* Complaint ¶¶ 3, 6, 7; NoR ¶¶ 6, 7, 9).

Defendants assert that "[t]he citizenship of co-defendant [WFC] should be disregarded for removal purposes because it is a sham defendant fraudulently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:     Frank L. Waterman v. Wells Fargo & Co., et al.

added into the Complaint solely in an attempt to prevent removal." (NoR ¶ 9). According to Defendants, because "all of Plaintiff's claims stem from his employment," he "cannot assert any of his causes of action against [WFC] as a matter of law because that entity never employed Plaintiff." (*Id.*). Defendants contend that WFC and WFB "are entirely separate entities" and that WFC's "only connection to this case is that it is the parent company of Plaintiff's employer, [WFB]." (*Id.* ¶ 11).

## B. Documents Filed in Connection with the Motion

In connection with his Motion, Plaintiff filed a Request for Judicial Notice ("RJN") (Docket No. 15) of Exhibits 2 and 3 to the Declaration of Cory Baskin (Docket No. 14), which are, respectively: (1) a "Sales Practices Investigation Report," dated April 10, 2017 (the "Report"), prepared by the independent directors of WFC's board and available on the investor relations page of WFC's website; and (2) the prepared testimony of WFC's former CEO, John Stumpf ("Stumpf Testimony"), which was prepared in connection with Stumpf's September 29, 2016 testimony to the U.S. House of Representatives Financial Services Committee and is available on the Committee's website.

Defendants object to the Court's consideration of the Report and the Stumpf Testimony on the ground that those documents are not subject to judicial notice, and on relevancy and "lack-of-foundation / personal knowledge and speculation" grounds. Defendants do not question the authenticity of the documents, and there appears to be no reason to do so. As Plaintiff points out, public records (the Stumpf Testimony) and documents that are available on a party's own website (the Report) are the proper subject of judicial notice. *See, e.g., Benhabib v. Hughes Electronics Corp.*, No. CV 04-0095 CAS (VBKx), 2007 WL 4144940, at *5 n. 11 (C.D. Cal. Mar. 30, 2007) ("The Court OVERRULES defendants' objections because (1) the Court may take judicial notice of the SEC 10-K statements, as they are readily available and verifiable to the Court through the SEC's website, and (2) to the extent that those documents contain statements about the interrelatedness of operations, the statements are party admissions, and therefore an exception to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:    Frank L. Waterman v. Wells Fargo & Co., et al.

hearsay rule."); *Vitt v. Apple Computer, Inc.*, No. CV 06-7152-GHK (RCx), 2007 WL 9662403, at *2 (C.D. Cal. Mar. 12, 2007) (taking judicial notice of statements appearing on defendant's website).

While the Court could reach the same ultimate decision regarding remand without these documents, they are relevant to the question of whether Plaintiff might plausibly state a claim against WFC under an "integrated enterprise" theory (*see infra*), and therefore relevant to this Motion.  Despite referencing, in passing, "lack of foundation / personal knowledge and speculation" in its objections, Defendants make no arguments to support such objections, let alone serious ones.  Accordingly, Defendants' objections are **OVERRULED** and Plaintiff's RJN is **GRANTED**.

Plaintiff offers the Report and the Stumpf Testimony in support of his argument that WFC was involved in WFB's personnel decisions during the relevant time period, including the decision to terminate Plaintiff's employment.  Plaintiff notes that the Stumpf Testimony repeatedly refers to WFC and WFB as "we," "thereby acknowledging WFC's involvement at all levels of the scandal, from the creation and encouragement of unethical sales practices, to the terminations of its employees," according to Plaintiff.  (Mot. at 6; *see* Stumpf Testimony *passim*).

Plaintiff highlights the following content from the Report (*See* Mot. at 3-4):

- "On September 29, 2016, in testimony before the House Financial Services Committee, John Stumpf stated that he is 'fully accountable for all unethical sales practices in our retail banking business' and acknowledged his failure for 'not doing more sooner to address the causes of this unacceptable activity.'" (Report at 9).

- "In late 2015, a Sales Practices Oversight ('SPO') unit was established in Corporate Risk; among other things, it provided challenge to the first line of defense in the Community Bank [*i.e.,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:    Frank L. Waterman v. Wells Fargo & Co., et al.

WFB] over key risk decisions and processes and coordinated with other second line oversight functions responsible for complaints management, corporate investigations, global ethics, human resources and employee relations… The buildout of Corporate Risk is continuing and efforts to centralize the risk function have been accelerated. In 2016, 4,100 risk employees who previously reported to the lines of business were realigned and now report to Corporate Risk." (Report at 70-71).

- "On May 4, 2015, the Los Angeles City Attorney filed a lawsuit against Wells Fargo [*i.e.,* WFC] alleging that Wells Fargo set unrealistic sales goals, which pressured employees to resort to abusive and fraudulent tactics to meet their targets, and that Wells Fargo profited through fees levied on customers… The lawsuit's allegations led the [WFC] Law Department attorneys and others within Wells Fargo to consider whether employees' 'gaming' behavior carried with it the potential of customer harm. Consequently, the Community Bank and the Law Department collectively began to work with the Community Bank's deposits team to better understand that issue…" (Report at 77).

- "The efforts to centralize HR functions, which began in earnest in 2015, have been accelerated along with the associated authority and responsibility to manage risk and cultural change throughout the company. Since 2016, the HR leads in the lines of business have reported directly to [WFC] Corporate HR." (Report at 87).

- "Internal Investigations is a group within Wells Fargo that investigated allegations of employee misconduct and made determinations if misconduct was proved… It made recommendations concerning terminations, but not the final decisions. Internal Investigations appears to have operated independently of the lines of business. Investigators do not appear to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)               Date:  January 4, 2018
Title:    Frank L. Waterman v. Wells Fargo & Co., et al.

have felt pressure to forgo investigating sales integrity violations or to have believed that their determinations could be overruled by the lines of business or other control functions at Wells Fargo."  (Report at 88).

- "Between 2011 and 2016, Wells Fargo Audit Services ('Audit') conducted periodic audits that touched on sales practice issues within the Community Bank…"  (Report at 91).

In connection with their Opposition, Defendants filed declarations of Patricia Ruedenberg, an Assistant Secretary of WFB, and Lorie Junnila, an Employee Relations Senior Consultant for WFB.  (Declaration of Patricia Ruedenberg ("Ruedenberg Decl.") (Docket No. 18 at 15-16); Declaration of Lorie Junnila ("Junnila Decl.") (Docket No. 18 at 18-19)).  Ruedenberg states that WFC "is a financial holding company that, at this time, indirectly holds 100% of [WFB's] common stock," and that WFC and WFB "are separate entities that are managed separately with separate operations" and that "[b]oth entities observe all applicable corporate formalities necessary to maintain their status as separate entities."  (Ruedenberg Decl. ¶¶ 3, 6).  Junnila states that Plaintiff was employed by WFB, not WFC, and attaches Plaintiff's 2012-2016 W-2 and wage statements, which are from WFB.  (Junnila Decl. ¶¶ 3-5, Exs. A, B).  Junnila states that "[b]ased upon [her] review of business records …, only [WFB] employees made decisions regarding Plaintiff's employment" and "Plaintiff was terminated by Erica Tejeda, who was Plaintiff's District Manager within [WFB]."  (*Id.* ¶ 6).

In connection with his Reply, Plaintiff has also filed his own declaration and a declaration of a former co-worker, Bruce Crawford, who was also terminated shortly after Plaintiff.  (Declaration of Frank Waterman ("Waterman Decl.") (Docket No. 22-1); Declaration of Bruce Crawford ("Crawford Decl.") (Docket No. 22-2)).  About a week before his termination, Plaintiff was "summoned" to meet with a man named Jamie La Manna, who identified himself as an investigator affiliated with "Internal Investigations, Wells Fargo Financial Crimes Risk Management."  (Waterman Decl. ¶ 3).  La Manna "interrogated [Plaintiff]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:    Frank L. Waterman v. Wells Fargo & Co., et al.

regarding [his] handling of the account of one of [his] clients" and "accused [Plaintiff] of aiding and abetting money laundering and even terrorism." (*Id.* ¶ 4). Crawford was also "interrogated" by La Manna about a month before his termination. (Crawford Decl. ¶¶ 2-4).

Defendants object to Plaintiff's introduction of these declarations for the first time in connection with his Reply. (*See* Docket No. 23). This objection is well taken, as it is inappropriate to introduce evidence for the first time in connection with a reply brief. But rather than exclude the Waterman and Crawford Declarations, the Court will consider them and will also consider the Declaration of Jamie LaManna ("LaManna Decl.") that Defendants filed. (Docket No. 23-1 at 5-6). According to LaManna, he is employed as a Senior Internal Investigator by WFB, not WFC, and reported his investigatory results and recommendations to Plaintiff's WFB supervisor. (*See* LaManna Decl. ¶¶ 3-6). Defendants have also requested leave to file a sur-reply. The issue of whether or not Plaintiff was interrogated by someone who is employed by WFB versus WFC is tangential to the core issue presented by this Motion – whether Plaintiff *could* state a claim against WFC under settled California law (*see infra*). The LaManna Declaration is sufficient; a sur-reply is unnecessary.

Accordingly, Defendants' request to file a sur-reply is **DENIED**.

## II.   DISCUSSION

As both parties acknowledge, the threshold requirement for removal under 28 U.S.C. § 1441 is a "finding that the complaint . . . is within the original jurisdiction of the district court." *Ansley v. Ameriquest Mortgage Co.,* 340 F.3d 858, 861 (9th Cir. 2003). Federal question jurisdiction is not asserted and the jurisdictional amount is not in doubt. The issue, then, is whether WFC defeats complete diversity, or whether the Court should disregard its presence on fraudulent joinder grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:    Frank L. Waterman v. Wells Fargo & Co., et al.

"Because plaintiff's motion to remand challenges the basis of the court's subject matter jurisdiction, the court may consider extrinsic evidence." *Prime Healthcare Services – Shasta, LLC v. Sierra Pacific Industries*, No. 2:15-CV-2007-CMK, 2016 WL 740529, at *2 (E.D. Cal. Feb. 25, 2016) (citing *McCarthy v. U.S.*, 850 F.2d 558 (9th Cir. 1988)).  While, in the context of a motion to remand due to lack of diversity jurisdiction, it is "well established that courts may pierce the pleadings … and examine evidence," it is "also well established that courts ought to construe facts in favor of the plaintiff where there is disputed evidence." *Reynolds v. The Boeing Company*, No. 2:15-2846-SVW-AS, 2015 WL 4573009, at *3 (C.D. Cal. Jul. 28, 2015) (internal quotation marks and citations omitted).

"The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks and citation omitted).

### A.    Fraudulent Joinder

An exception to the complete-diversity rule recognized by the Ninth Circuit "'is where a non-diverse defendant has been 'fraudulently joined.'" *Id.* (quoting *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001)).  The joinder is considered fraudulent "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state . . . ." *Id.* (quoting *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007)).  A removing defendant must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *accord Reynolds*, 2015 WL 4573009, at *2 ("To prove fraudulent joinder, the removing defendant must show that *settled* law *obviously* precludes the liability against the nondiverse defendant.") (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                Date:  January 4, 2018
Title:     Frank L. Waterman v. Wells Fargo & Co., et al.

Because defendants face a heavy burden in establishing that removal is appropriate, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998)). "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Id.*; *see also Good*, 5 F. Supp. 2d at 807 ("[T]he defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant."). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).

### B.     **WFC's Potential Liability**

Plaintiff and Defendants both recognize that, under California law, Plaintiff's age discrimination, whistleblower retaliation, and wrongful termination in violation of public policy claims may only be asserted against an employer. They also both recognize that WFC and WFB are separate corporate entities, and that Plaintiff was, at least as a matter of paycheck provenance and tax reporting, employed by WFB.  Finally, they also both recognize that, under California law, there are exceptions to the general rule of corporate separateness in the employment litigation context and that, in proper circumstances, an employee may sue not only the corporation that he receives his paychecks or W-2s from, but also another related corporation that, in reality, exercises control over the employment relationship.  They disagree about whether any such exception plausibly applies here.

While "[a]n employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:       Frank L. Waterman v. Wells Fargo & Co., et al.

federal law," the employee may meet that burden by establishing that the parent corporation and the subsidiary constitute an "integrated enterprise." *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737, 80 Cal. Rptr. 2d 454 (1998).

"Under the 'integrated enterprise' test, courts consider the factors of (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control, to determine whether separate corporate entities should be deemed a single employer." *Blazek v. Adesa California, LLC*, No. 09cv1509 BTM (BLM), 2009 WL 2905972, at *2 (S.D. Cal. Sept. 8, 2009) (citing *Laird*, 68 Cal. App. 4th at 737) (rejecting defendants' fraudulent joinder arguments and remanding employment discrimination action to state court).  Centralized control of labor relations is often deemed the most important factor, and the "critical question is, what entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Laird*, 68 Cal. App. 4th at 738.

Defendants argue that "based on the evidence provided here, it is evident that Plaintiff cannot possibly state a claim against [WFC] on any theory (*e.g.*, employer or joint employer) and could not possibly recover from [WFC]."  (Opp. at 6).  Defendants contend that Plaintiff's "only support for his averments [of an integrated enterprise] are a series of statements he culled from [the Report] …and an excerpt from John Stumpf's … testimony," whereas Defendants have provided the Junnilla and Ruedenberg declarations, which establish that "Plaintiff was employed only by [WFB] and managed and supervised only by employees of [WFB]" and that WFB and WFC "are separate entities that are managed separately with separate operations…"  (Opp. at 6-9).

While the Court considers declarations and other evidence that the parties present in connection with this Motion, it resolves all disputes and ambiguities in Plaintiff's favor.  *See Reynolds*, 2015 WL 4573009, at *3; *Blazek*, 2009 WL 2905972, at *2.  Through the Stumpf Testimony, the highlighted excerpts of the Report, and Plaintiff's own declaration that he was interrogated by an investigator

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:     Frank L. Waterman v. Wells Fargo & Co., et al.

sent by WFC a week before he was fired, Plaintiff has made a colorable showing that WFC might have been materially involved in his employment and his termination.

At this juncture, this showing is not conclusively undercut by the declarations of two WFB employees offering generalities about WFC's observance of corporate separateness and the like.  Nor is it conclusively undercut by LaManna's statement that he is employed by WFB, not by WFC.  After all, if Plaintiff is able to show that WFC exercised control over his own employment, he might – after conducting discovery – also be able to show that it exercised control over LaManna's employment and that LaManna "interrogated" him at WFC's behest.  Even at this early (pre-discovery) stage, this scenario is plausible in light of the Report's statement that "Internal Investigations is a group within Wells Fargo [*i.e.,* WFC] that investigated allegations of employee misconduct…"   *See Gebran*, 2016 WL 7471292, at *9 ("[E]ven assuming the terms and conditions of Plaintiff's employment were contractually controlled by WFB, this does not mean that it is impossible for WFC to exercise control over Plaintiff's employment at WFB[ ] *in practice*.") (emphasis in original); *Blazek*, 2009 WL 2905972, at *2 ("the Court is not willing to conclude from this bare statement [that two companies operate independently and do not jointly employ any employees] that there is *no possibility* that Plaintiff can establish that [the corporate parent] is her employer" and "the Court declines to conclude that Plaintiff will not be able to show [that corporate parent was involved in employment decisions] after conducting discovery").

More fundamentally, Defendants seem to misunderstand the burden they face in establishing fraudulent joinder and the nature of the Court's present inquiry.  The present pre-discovery evidentiary record does not mean all that much, as the question is not whether Plaintiff has already *proven* that WFB and WFC are an "integrated enterprise," but whether it is *possible* for Plaintiff to state a claim against WFC under that theory.  *See Gebran v. Wells Fargo Bank, N.A.*, No. CV 16-07616 BRO (MRWx), 2016 WL 7471292, at * 9 (C.D. Cal. Dec. 28, 2016)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                    Date:  January 4, 2018
Title:    Frank L. Waterman v. Wells Fargo & Co., et al.

(rejecting WFB's and WFC's argument that plaintiff could not state employment discrimination claim against both WFB and WFC, even though she was only contractually employed by WFB, and remanding action to state court). It is entirely possible.

In other types of employment discrimination and wrongful termination actions, courts routinely grant motions to remand notwithstanding defendants' arguments that a plaintiff has not *yet* stated a viable claim against the purportedly fraudulently joined defendant and/or that the *present* evidentiary record would not support liability as to the purportedly fraudulently joined defendant. For example, an employer does not properly remove a discrimination and harassment action simply because the plaintiff has not yet stated a viable harassment claim against a non-diverse (and allegedly fraudulently joined) supervisor. As one district court stated,

> [E]ven if the Court presumes for purposes of discussion that the complaint does not allege sufficient facts to meet this requirement [of pervasive harassment] as to Warenda [the supervisor], Defendants have failed to demonstrate fraudulent joinder. As explained above, Defendants must demonstrate that Plaintiffs ***could not possibly state a claim*** against Warenda in state court. Even if the allegations in Plaintiffs' complaint are insufficient to withstand a demurrer in state court, an issue as to which the Court offers no opinion, Defendants have not sufficiently established that Plaintiffs could not amend their complaint and add additional allegations to correct any deficiencies. In other words, the complaint's shortcomings, if any, are strictly factual; Plaintiffs clearly may pursue a cause of action for harassment against Warenda under section 12940(j)(3) of the California Government Code if they can allege sufficient facts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-17-7190-MWF (JEMx)                   Date:  January 4, 2018
Title:     Frank L. Waterman v. Wells Fargo & Co., et al.

*Stanbrough v. Georgia-Pac. Gypsum LLC*, No. CV 08-08303GAF(AJWX), 2009 WL 137036, at *2 (C.D. Cal. Jan. 20, 2009) (emphasis in the original); *see also Ontiveros v. Michaels Stores, Inc.*, No. CV 12-09437 MMM (FMOx), 2013 WL 815975, at *6 (C.D. Cal. Mar. 5, 2013) ("While Michaels' argument might prevail in the context of a motion to dismiss, it does not suffice to support removal on the basis of fraudulent joinder. Even if the complaint does not allege sufficient facts to plead a viable harassment claim against Baghdadlian, Michaels has not shown that the Ontiveros could not amend to add additional allegations of harassment.").

The principle that a defendant does not demonstrate fraudulent joinder merely by arguing that the plaintiff has not *yet* stated a viable claim against the non-diverse defendant applies with equal force in this case. And as indicated above and as stated at the hearing, district courts routinely remand cases in situations in which the potential liability, while possible, is actually quite unlikely.

In sum, it is far from evident at this juncture that Plaintiff could not possibly state a claim against WFC under an "integrated enterprise" theory. Defendants have therefore failed to establish that WFC, which is headquartered in San Francisco, was fraudulently joined and that this Court has diversity jurisdiction.

Accordingly, the Motion is **GRANTED** and the case is remanded to Superior Court.

### C.   Attorneys' Fees

Plaintiff also requests an award of attorneys' fees incurred in connection with Defendants' removal and this Motion. (Mot. at 8-11). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court may award attorneys' fees where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV-17-7190-MWF (JEMx)  **Date:**  January 4, 2018
Title:     Frank L. Waterman v. Wells Fargo & Co., et al.

Whether or not to award fees and costs under section 1447(c) is within the Court's discretion.  *See* 28 U.S.C. § 1447(c) ("order remanding the case ***may*** require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal") (emphasis added); *Dall v. Albertson's Inc.*, 349 F. App'x 158, 159 (9th Cir. 2009) ("Following remand of a case upon unsuccessful removal, the district court may, in its discretion, award attorney's fees . . . .").

Given that removal in this action was at least colorable, Plaintiff's request for costs and attorneys' fees is **DENIED**.

## III.    CONCLUSION

For the foregoing reasons, the Motion to Remand is **GRANTED**.

The Court **REMANDS** the action to the Superior Court of the State of California for the County of Los Angeles.

IT IS SO ORDERED.